**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                         Criminal No.  03-210 WJ

GABRIEL GUILLEN-ZAPATA and
ERASMO RUIZ-SOTO,

        Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS**

THIS MATTER comes before the Court pursuant to Defendants' Motion to Suppress
Physical Evidence and Statements filed April 7, 2003[Docket No. 37].  A hearing was held on
July 7, 2003.  After considering the testimony of witnesses, the briefs of the parties, argument of
counsel and the applicable law, I ruled on July 7, 2003 that Defendants' motion was denied.  I
hereby make my Findings of Fact and Conclusions of Law with regard to that ruling.

**FINDINGS OF FACT**

The Birchfield area in Doña Ana County, State of New Mexico, is flat desert terrain
composed of rock and sand.  The Birchfield area is located between New Mexico Highway 9
(Highway 9) and the U.S./Mexico border.  Highway 9 runs along the north edge of the Birchfield
area.  The Birchfield area runs the length of the U.S./Mexico border for approximately five miles,

and varies in width from a quarter of a mile to one mile.  There is no designated Port of Entry in the Birchfield area.  A ranch house approximately ten miles to the east is the closest structure on the American side of the border.  The closest designated ports of entry are approximately thirty miles away.  Specifically, the Santa Teresa Port of Entry is approximately 40 miles to the east, and the Columbus Port of Entry is approximately 40 miles to the west.  Highway 9 runs east/west, parallel to the U.S./Mexico border.  Also, Highway 9 is paved, and provides a convenient route to Columbus, N.M. from the Birchfield area.

On December 19, 2002, at approximately 7:30 P.M., a traffic sensor activated in the Birchfield area.  Border Patrol Agent Jimenez (Agent Jimenez) and his Border Patrol partner were parked in a marked Border Patrol vehicle approximately a few hundred yards on a dirt path off of Highway 9.  Agent Jimenez and his partner waited a few minutes before responding to the sensor so that the vehicle that had activated the sensor would not be "spooked." The distance between the Agents' location and the sensor was approximately one mile.

After several minutes, Border Patrol Agent Jimenez drove towards Highway 9.  Just as the Border Patrol vehicle reached Highway 9, a vehicle passed Agent Jimenez and his partner heading west.  Agent Jimenez saw the tail lights of this vehicle and also saw the tail lights of an oncoming vehicle traveling west on Highway 9.  Agent Jimenez called out this observation via radio.  The distance traveled by the first vehicle that had passed the Agents fit within the time frame that it would take a vehicle to activate the sensor and travel such a distance.

As the Border Patrol vehicle drove east on Highway 9 towards the activated sensor, the second vehicle passed.  The distance traveled by the second vehicle also fit within the time frame that it would take a vehicle to activate the sensor and travel such a distance.  Agent Jimenez

2

called out via radio that he had seen some type of utility vehicle.

Agent Jimenez continued to drive eastbound to the area of the sensor activation.  From the time that Agent Jimenez traveled from the spot where he had initially been parked until the time he reached the sensor, Agent Jimenez only observed the two vehicles just described on Highway 9.  Once at the sensor activation spot, Agent Jimenez saw vehicle tracks across the mark out spot that turned westbound onto Highway 9.  At this point, Agent Jimenez called out via radio that there were good tire tracks, and alerted other Agents to take a look at the two vehicles heading westward on Highway 9.  In this location, Highway 9 is approximately 500 yards from the U.S./Mexico border.

Agent Jimenez has approximately six and a half years experience in the Border Patrol.  He has been involved in several prior drug seizures in the Birchfield area (Highway 9 played a part in one of these previous drug seizures).

Approximately five minutes after the sensor triggered, the two vehicles, still heading west on Highway 9, passed Border Patrol Agent McCrary (Agent McCrary).  At this spot, Highway 9 is approximately one mile from the U.S./Mexico border.  Agent McCrary was not in his Border Patro9l vehicle when the vehicles passed.  As a result, he called out via radio that two utility trucks passed his position.  The two utility trucks were approxi8mately three car lengths apart from each other.  In Agent McCrary's estimation, the two utility trucks were traveling at the same pace, and this pace was at least sixty miles per hour.

Agent McCrary has approximately five years experience in the Border Patrol.  He has participated in approximately ten drug seizures in the Birchfield area.

A different Border Patrol vehicle, being driven by Border Patrol Agent Duggan (Agent

Duggan) and accompanied by another Border Patrol Agent was traveling east on Highway 9.

From monitoring the radio traffic, Agent Duggan knew that: 1) there was a sensor activation; 2)

vehicle tracks indicated westbound traffic; 3) two utility trucks were westbound on Highway 9.

At one point, both utility trucks, headed westbound, passed Agent Duggan in his Border Patrol

vehicle.  Because Agent Duggan was driving in the opposite direction, he made a u-turn and

started to follow the two utility trucks.  The two utility trucks were driving approximately 100

yards apart.  Agent Duggan tried to pass the trailing utility truck (trailing utility truck) to catch up

with the lead utility truck (lead utility truck).  Agent Duggan looked into the cab of the trailing

utility truck.  He noticed that the driver was wearing a construction hat.  This struck Agent

Duggan as odd because of his previous experience as a construction worker that construction hats

are uncomfortable and that the person wearing the construction hat takes it off as soon as

possible.  The lead utility truck then began to distance itself from the Border Patrol vehicle and

the trailing utility truck at a high rate of speed.  At this point, Agent Duggan decided that he could

not catch the lead utility truck and decided to stop the trailing utility truck.  As a result, Agent

Duggan re-positioned the Border Patrol vehicle behind the trailing utility truck and turned on his

emergency lights.  The trailing utility truck, a 1991 Ford F-350 utility truck, stopped.  This vehicle

was driven by Co-Defendant Guillen-Zapata.

As agent Duggan approached the trailing utility truck, he smelled burning plant material

coming from underneath the vehicle.  In Agent Duggan's experience, this smell is unique to off-

road driving and only lasts for a short time.  Agent Duggan asked its driver and only occupant,

Co-Defendant Guillen-Zapata, standard immigration questions and learned that he is a Mexican

citizen without proper documentation to be in the United States.  Agent Duggan then noticed the

4

odor of marijuana coming from the cab of the truck, and he could also see wrapped bundles behind the seat. Besides having already observed that Co-Defendant Guillen-Zapata was wearing a construction hard hat, Agent Duggan further observed that he was wearing a reflector vest. When asked what he was carrying in the vehicle, Co-Defendant Guillen-Zapata answered "nothing, I don't know." Agent Duggan confirmed that the vehicle was carrying a large amount of marijuana and radioed this information to the other agents.

The utility truck driven by Co-Defendant Guillen-Zapata contained approximately 1,600 pounds of marijuana.

Agent Duggan has approximately six years experience in the Border Patrol. He has been involved in three prior drug seizures in the Birchfield area. Agent Duggan also knew two vehicles had successfully entered the United States illegally at approximately the same location in the prior two weeks to the instant matter.

Border Patrol Agent Blea (Agent Blea), parked in a Border Patrol vehicle along Highway 9, was monitoring the radio communications as they were occurring. The lead utility truck then passed Agent Blea in his Border Patrol vehicle. At this point, Agent Blea knew: 1) a sensor had been activated; 2) vehicle tracks were found coming from the border; 3) there were two vehicles driving west; 4) the vehicles had been recognized as utility trucks; and 5) Agent Duggan was driving behind the trailing utility truck. Agent Blea then pulled in behind the lead utility truck. Agent Blea was able to catch up to it. The lead utility truck turned on its left blinker, slowed down to approximately 40 miles per hour, and veered to the right side of the driving lane. Agent Blea interpreted this to mean that the driver of the lead utility truck wanted him to pass. Agent Blea then heard over the radio that the trailing utility truck had been stopped and that it contained

marijuana.  At this point, Agent Blea turned on the Border Patrol unit's emergency lights.  The lead utility truck did not respond to the emergency lights.  Agent Blea then turned on his siren.  In response, the leading utility truck continued to drive approximately 40 miles per hour in a designated 55 miles per hour speed limit zone for about a mile.  During this time, the lead utility truck veered over to the right side of the road.  The driver of the lead utility truck then accelerated and distanced himself from Agent Blea.  Agent Blea then radioed this information to Deming Border Patrol agents.  Agent Blea decided to back off by not accelerating at the same pace as the lead utility truck.  Instead, Agent Blea continued at the same speed, allowing the lead utility vehicle to get approximately half a mile to a mile ahead of him.  Agent Blea, however, was able to see the lead utility truck because of the flat terrain surrounding Highway 9.  He saw the lead utility truck turn south off the road and crash through a fence.  The lead utility truck traveled approximately four hundred yards until it stopped.  Because he did not know how many individuals were in the lead truck, Agent Blea did not pursue the lead utility truck through the fence; rather he waited for back-up to arrive.  A United Sates Border Patrol helicopter, piloted by Agent Vieth, arrived.  Pilot Vieth reported that there was no one else in the utility truck and that one subject was observed approximately one hundred yards south of the truck.  Agent Blea then proceeded to the area and arrested the individual who is Defendant Ruiz.  A .45 caliber Ruger was found approximately 10 yards from Defendant Ruiz.

Agent Blea has approximately eight (8) years experience in the Border Patrol.  He has been involved in six to eight prior drug seizures in the area and Highway 9 played a part in all of these previous drug seizures.

The lead utility truck driven by Defendant Ruiz contained approximately 1,600 pounds of marijuana.

**CONCLUSIONS OF LAW**

The Tenth Circuit recently reiterated in United States v. Gandara-Salines, 327 F.3d 1127 (10th Cir. 2003) that the Fourth Amendment requires a finding of reasonable suspicion that criminal activity may be afoot in order to conduct roving Border Patrol stops.  In that case, the Court found that although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause and it falls considerably short of satisfying a preponderance of the evidence standard.  Id. at 1129.  Border Patrol agents may thus stop vehicles if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion of criminal activity.  Id.

A law enforcement officer may assess the following factors in light of his experience and specialized training, and a court should accord deference to an officer's ability to distinguish between innocent and suspicious actions.  Id. at 1130.  First, the characteristics of the area in which the vehicle is encountered.  Second, the proximity of the area to the border.  Third, the usual patterns of traffic on the particular road.  Fourth, the previous experience of the agent with alien traffic.  Fifth, information about recent illegal border crossings in the area.  Sixth, the driver's behavior, including any obvious attempts to evade officers. Seventh, aspects of the vehicle, such as a station wagon with concealed compartments.  Eighth, the appearance that the vehicle was heavily loaded.

Applying the law as set forth in Gandara-Salinas to the facts established in this case, the Court finds the following:

With regard to the first factor, the area was a very remote, desolate desert area.  With regard to the second factor, the distance between Highway 9, which runs parallel to the border, and the border ranges from half a mile to a mile.    With regard to the third factor, there was not a

lot of heavy traffic on Highway 9 at the relevant time.  In fact, other than the Border Patrol vehicles, the only other vehicles testified about were the two vehicles these defendants were driving.  With regard to the fourth factor, all of the Border Patrol officers who testified today have extensive experience in this Birchfield area, were familiar with recent illegal crossings of the border, so that factor is satisfied.  With regard to the fifth factor, all the officers have extensive experience in this area and were familiar with past illegal border crossings and were familiar with the sensors that are used in this area.  With regard to the sixth factor, defendant Ruiz-Soto attempted to evade the officer.  With regard to the seventh factor, it is satisfied because both vehicles were utility trucks with various concealed compartments.  The eighth factor is not applicable in this case.

The seven factors just listed must be viewed in the totality of the circumstances.  United States v. Arvizu, 534 U.S. 266, 273 (2002).

Further, when Agent Blea attempted to stop defendant Ruiz-Soto, he knew of Agent Jimenez' observations, Agent McCrary's observations, and that Agent Duggan had stopped the other utility truck and Agent Duggan personally observed what appeared to him to be bundles or packages of marijuana in plain view in the cab of the utility truck.

These factors are relevant in determining whether an immigration stop is supported by reasonable suspicion.  Under a totality of the circumstances test, there was more than reasonable suspicion for the Border Patrol agents to stop both vehicles.

IT IS THEREFORE ORDERED that Defendants' Motion to Suppress Physical Evidence and Statements [Docket No. 37] is hereby DENIED.

UNITED STATES DISTRICT JUDGE